**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION**

IN RE:

LARRY C. ADDINGTON                                                          CASE NO. 12-10029

DEBTOR

ROBERT J. BROWN, TRUSTEE                                                           PLAINTIFF

V.                                                                    ADVERSARY CASE NO. 14-1008

CATHY G. RAYGOZA                                                                   DEFENDANT

**MEMORANDUM OPINION**

    Robert J. Brown, the chapter 7 trustee, brought this adversary proceeding to recover a fraudulent transfer from Larry C. Addington, the Debtor, to his half-sister, Cathy Raygoza (the "Defendant"). The deed of conveyance provided that the parties valued the mineral rights transferred at $150,000, while Defendant paid only $20,000. The Trustee argues this transfer is both constructively and actually fraudulent under Kentucky law.

    The Trustee satisfied his burden to show a constructively fraudulent transfer occurred. Under Kentucky law, a conveyance is constructively fraudulent if the value of the thing conveyed substantially exceeds the consideration for the conveyance. The parties to the deed of conveyance swore that the value of the mineral rights at the time of transfer greatly exceeded the consideration paid. Neither party provided convincing evidence that the value of the mineral rights was anything other than the value they agreed to in the deed.

I.      FACTS AND PROCEDURAL HISTORY.

   A.  Undisputed Facts.

The Defendant and the Debtor acquired certain mineral rights in Kentucky and West Virginia from Carbon Fuels Properties, LLC in March 2007 (the "2007 Deed"). [Doc. 29-1.] The Debtor received a 23% interest in the mineral rights, the subject of this recovery action, while the Defendant received an 18% interest. The 2007 Deed provided that the grantees collectively paid $10.00 and "other good an valuable consideration" for the interests conveyed. [*Id.* at 2.]

The Defendant purchased the Debtor's 23% mineral interest by Mineral Deed dated February 5, 2009, the disputed transfer (the "2009 Deed"). [Doc. 29-2.] The 2009 Deed also provided that the consideration was $10.00 and "other good and valuable consideration." [*Id.*] The 2009 Deed contained the following "Certificate of Consideration," which both parties "acknowledged, subscribed and swor[e] to[:]"

> To comply with both West Virginia and Kentucky law and recording requirements, the Parties[1] do hereby declare, and do hereby certify pursuant to KRS Chapter 392,[2] that the Fair Market Value of the property conveyed herein is $150,000. The Parties further certify they understand the falsification of the state Fair Market Value is a Class D felony under Kentucky law subject to one to five years imprisonment and fines up to $10,000.

The Defendant received $16,390 in royalties from her 18% interest in the nine months of 2007 when she owned the mineral interest and $42,128 for 2008. [Doc. 29-11.] The Defendant received royalties of $2,037 for her 18% interest in January 2009, before the 2009 transfer, and thereafter received an additional $25,641 in royalties for the

---

[1] "Parties" is not defined, but refers to the participants in the contract, *i.e.,* the Grantor [the Debtor] and the Grantee [the Defendant].
[2] The reference to Chapter 392 appears to be a typographical error. Chapter 382 of the Kentucky Revised Statutes addresses conveyances and was correctly referenced in the 2007 Deed.

2

balance of the year for her 41% interest. [*Id.*] Surprisingly, neither party submitted similar evidence of royalties after 2009.

### B. Procedural History.

On January 26, 2012, the Debtor filed a petition under chapter 11. The Debtor's case was converted to a case under chapter 7 on May 14, 2012, on motion of the U.S. Trustee. The Plaintiff was elected trustee on June 19, 2012.

Shortly before the expiration of the two-year statute of limitations to bring avoidance actions, *see* 11 U.S.C. § 546(a), the Plaintiff moved to extend the deadline. [Doc. 212 in main case.] The Plaintiff sought an order equitably tolling the limitations period because the Debtor had failed to preserve documents that were critical to the Trustee's investigation of potential causes of action. Further, the Debtor's failure to file tax returns for a number of years had forced the Plaintiff to delay his investigation while he prepared the required forms. Relief was granted extending the § 546(a) statute of limitations by 270 days, to October 24, 2014. [Doc. 220 in main case.]

On October 24, 2014, the Plaintiff filed this adversary proceeding. The Defendant moved to dismiss, arguing that the proceeding was time-barred. The Defendant argued that the order extending the statute of limitations did not apply to her because she lacked notice of the Plaintiff's motion and this adversary proceeding was too simple to support the Plaintiff's request for tolling. The Court denied the Defendant's motion for the reasons stated on the record of the hearing. [Doc. 24.]

### C. The Trial.

Two witnesses testified at trial: the Defendant on her behalf and the Plaintiff on his behalf.

3

<u>Defendant</u>.  The Defendant testified that she is the vice president of a natural gas company, and has degrees in geology and geological engineering technology.  She and the Debtor have the same father and she is twenty-eight years younger than the Debtor.  Therefore, they did not grow up in the same household and maintain a cordial, but distant, relationship.

The Defendant and the Debtor received the mineral interests evidenced by the 2007 Deed when Carbon Fuels was sold in 2007 as a bonus for their hard work.  Thereafter, the natural gas market became depressed and the Defendant saw an opportunity to buy the Debtor's 23% interest.  Her initial offer to purchase the Debtor's mineral interest for $20,000 was rebuffed.  The Debtor accepted a later offer, which is evidenced by the 2009 Deed.  The Defendant testified that, at the time of the purchase, she valued the Debtor's 23% interest at $20,000 to $35,000.  She arrived at that value based on her 2007-08 royalties and West Virginia tax valuations of $9,000 to 10,000.  [Doc. 29-10, Pltf's Ex. J.]

Despite the consideration of $10.00 listed in the Deed, the Defendant testified that she paid $20,000.00 cash, a figure she substantiated with a check she wrote to the Debtor dated one day before execution of the 2009 Deed.  [*See* Doc. 18-2.]  The Defendant testified that she has seen hundreds of deeds during her career that stated $10.00 as the cash consideration, even though a different amount was paid.

The Defendant also testified that the $150,000 valuation statement in the Deed was simply a mistake.  The Defendant admitted that she was aware of the discrepancy between the deed's valuation and hers when she signed the 2009 Deed, but she signed the deed out of "ignorance" and trust in the Debtor's attorney.  She also indicated she did not want to raise the issue and risk loss of the opportunity to purchase the Debtor's mineral interest.

The Defendant also testified that she subsequently purchased an 8% interest in the

4

mineral rights at the same property from her brother, Stephen Addington, in exchange for an interest in coal rights. Her combined 49% interest netted approximately $70,000 to $80,000 in royalties in 2013, and $60,000 in 2014.

  <u>Plaintiff</u>. The Plaintiff acknowledged he was not testifying as an expert on valuation, but he has liquidated these types of assets for estates many times during his long career as a trustee. Further, he often represents purchasers, sellers and secured creditors in transactions involving the transfer of oil and gas rights. In these capacities, the Plaintiff testified that he has acquired significant knowledge of rudimentary valuation methods in the gas industry. The Plaintiff's history of involvement in these kinds of cases is known to the Court. While this does not make him an expert, it is reasonable to give some consideration to his valuation testimony because he would need this type of knowledge to, for example, evaluate whether bringing this type of avoidance action could result in a meaningful recovery to the estate.

  The Plaintiff testified that a standard method to value such interests involves multiplying annual royalties by a factor of six to eight. This information is not surprising and it is well known that many sales are valued at a multiple of EBITDA or some other income-based number. The Plaintiff also testified that Bruce Addington's 18% interest in the same tract in which the Defendant holds interests had been valued at $2.2 million at some point near the transfer date.[3] [*See* Doc. 29-6.] On the basis of the Defendant's royalties, the valuation methods discussed above, and the valuation of Bruce Addington's interest, the Plaintiff estimated that the Debtor's 23% interest was worth between $170,000 and $2.8 million at the time of transfer.

  The Plaintiff also testified that there are unsecured claims that predate the 2009 Deed. The Plaintiff testified that nine proofs of claim state debts that predate the transfer: claims 1, 5,

---

[3] Doc. 29-6 references 2010, but it is not clear the valuation was as of that year.

6, 8, 9, 14, 25, 26[4] and 31.  He testified that he had found no basis to object to these claims, most of which were deficiency claims filed by creditors that took liens on equipment that is now liquidated.  The Trustee admitted on cross-examination that it was possible the equipment depreciated between the petition date and the time of sale.  The Trustee explained that Claim No. 6, filed by the Internal Revenue Service (IRS), involved claims for the failure to file 2001 tax returns.

II.   ANALYSIS.

The Plaintiff seeks to avoid the Debtor's transfer of his 23% mineral interest in the 2009 Deed under two Kentucky statutes, KY. REV. STAT. §§ 378.020 and 378.010, pursuant to the Plaintiff's strong-arm power under 11 U.S.C. § 544(b).  The Plaintiff's claims are statutorily core, and the Court has constitutional authority to enter a final judgment on this count.  *See* 28 U.S.C. § 157(b)(2)(H); *see also Official Comm. of Unsecured Creditors of Appalachian Fuels, LLC v. Energy Coal Res., Inc. (In re Appalachian Fuels, LLC),* 472 B.R. 731, 741 (E.D. Ky. 2012) (Bunning, J.) (holding that bankruptcy courts may constitutionally enter final judgment in fraudulent transfer claims); *Merv Props., LLC v. Fifth Third Bank (In re Merv Props., LLC),* No. 5:14–007, 2014 WL 201614, at *3 n. 5 (E.D. Ky. Jan. 17, 2014) (Reeves, J.) (same).

The merits of the Plaintiff's claims under § 378.020 is considered first because this statute requires a less demanding showing than the actual fraud required under § 378.010. Section 544(b) of the Bankruptcy Code avoids transfers that are voidable under applicable law by a creditor holding an allowable unsecured claim.  Section 378.020 voids transfers made "without valuable consideration" as to creditors existing at the time of the transfer.  As interpreted by Kentucky courts, a transfer made without valuable consideration is one in which the thing conveyed "exceed[s] in value by a substantial sum" the consideration given.  *Pope v.*

---
[4] The Trustee dropped proof of claim 26 from consideration during oral testimony.

*Cawood*, 168 S.W.2d 985, 988 (Ky. 1943); *cf. Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 319 B.R. 134, 140 (Bankr. E.D. Ky. 2004) (internal quotation marks omitted) (interpreting § 378.020 to provide that "a transfer for less than a fair and reasonable price is void"). To prevail, therefore, the Plaintiff must prove that (i) the Debtor sold his mineral rights to the Defendant for substantially less than their value, (ii) an unsecured creditor holding an allowable unsecured claim in the Debtor's bankruptcy case exists, and (iii) the creditor was a creditor at the time of the transfers.

### A. The Value of the Mineral Rights Substantially Exceeded the Consideration Paid.

#### 1. The Defendant Paid $20,000 for the Disputed Transfer.

The parties dispute the amount the Defendant paid for the Debtor's interest. The Plaintiff takes the position that the Debtor paid the consideration stated in the deed, $10.00; the Defendant claims she paid $20,000. The Defendant's testimony that she paid $20,000 is credible and persuasively substantiated by the check in that amount payable to the Debtor dated at the time of the transfer. This testimony is also not literally inconsistent with the language of the deed, which refers to ten dollars "and other good and valuable consideration."

The Plaintiff attempts to exclude this evidence by arguing it is barred by the parol evidence rule. The parol evidence rule is inapplicable in this adversary proceeding for at least two independent reasons. First, as the Defendant argues, Kentucky's parol evidence rule is only "applicable to controversies between parties to [a contract] or their privies." *Commonwealth v. Hardin*, 150 S.W.2d 477, 478 (Ky. 1941). This is not a dispute between the parties to the 2009 Deed.

The Plaintiff argues that he stands in the Debtor's shoes and can therefore invoke the parol evidence rule on the Debtor's behalf. [*See* Doc. 34 at 1-2.] The cases the Plaintiff cites,

7

however, all involved disputes in which trustees sought to enforce a debtor's rights under a contract. In this adversary proceeding, the Trustee stands in the shoes of an unsecured creditor, seeking to avoid a contract between the Debtor and the Defendant on grounds only available under state law to an outsider to the contract. For this reason, bankruptcy courts have held that the parol evidence rule does not apply to fraudulent transfer suits. *See Alberts v. HCA Inc. (In re Greater Se. Cmty. Hosp. Corp. I),* 365 B.R. 315, 318-19 (Bankr. D.D.C. 2007) (Teel, J.) ("[T]o the extent [a trustee] invokes § 544(b), he steps into the shoes of an unsecured creditor of the estate. . . . It is axiomatic that the parol evidence rule does not apply to disputes involving strangers to the contract at issue.").

Second, this adversary proceeding goes to the substance of the transaction, not the interpretation of the parties' contract. The Defendant is not attempting to prove that the contract called for her to pay $20,000, only that she actually paid that amount. For this reason, the parol evidence rule, which governs contract interpretation disputes, is inapplicable here. The "very essence" of a fraudulent transfer inquiry is the "true nature" of the underlying transaction, and "the parol evidence rule can[not] function as a false prophet to preclude consideration of evidence of . . . that self-same true nature." *Gaudet v. Babin (In re Zedda)*, 103 F.3d 1195, 1206 (5th Cir. 1997).

The Court finds that the Defendant paid $20,000 for the Debtor's 23% mineral interest conveyed by the 2009 Deed.

### 2. The Value of the Mineral Interest Was $150,000, the Value Certified in the 2009 Deed.

#### a. The Deed Certifies the Estimated Fair Market Value of $150,000.

The primary focus of the parties' dispute is the value of the 23% mineral interest conveyed by the 2009 Deed. The Defendant's statement that she would have paid $20,000 to

8

$35,000 is credible as to the amount she was willing to pay, but it sheds little light on the actual value of the interest. The Plaintiff's assertions that the mineral interest was worth between $170,000 and $2.8 million suggests there is a reason to question the Defendant's value. But, as the Trustee is not an expert by his own admission, this testimony is insufficient to find a specific dollar value for the mineral interest.

The starting point for any dispute is the underlying contract. The Defendant and the Debtor "acknowledged, subscribed and swor[e]" that the value of the mineral interest conveyed by the 2009 Deed was $150,000. The parties also certified that they understood that falsification of the interest's value was a felony under Kentucky law subject to penalty of imprisonment. The impact of this understanding, certified in the 2009 deed, is important to evaluate the weight of this evidence.

Kentucky imposes a tax on the transfer of real estate based on the value of the property transferred. KY. REV. STAT. § 142.050(2). To facilitate collection of the tax, the deed of conveyance must include a sworn, notarized certificate regarding the consideration paid or the estimated fair cash value of the property conveyed if transferred for nominal or no consideration. KY. REV. STAT. § 382.135(1)(d). The subject transfer only states a nominal consideration of $10.00, so the parties were required to estimate the value of the interest transferred to comply with Kentucky law.

Section 142.050(2) explains what the parties must certify:

> "Value" means: … 2. In the case of a gift, or any deed with nominal consideration or without stated consideration, the estimated price the property would bring in an open market and under the then prevailing market conditions in a sale between a willing seller and a willing buyer, both conversant with the property and with prevailing general price levels.

9

The importance of accuracy when disclosing value is evidenced by the significant punishment imposed for falsification of the value in the deed. "Any person who willfully and fraudulently gives a false statement as to the full actual consideration of property or the full estimated value under Ky. Rev. Stat. § 382.135, shall be guilty of a Class D felony." KY. REV. STAT. § 382.990(8). A Class D felony is punishable by one to five years in jail, *see* KY. REV. STAT. § 532.060, and a fine of up to $10,000, *see* KY. REV. STAT. § 534.030.[5]

The parties' certification shows they were aware of their obligation to give a true estimate of market value in the 2009 Deed. Further, the parties' certification that they were aware of the penalties for a false statement shows they understood the potential consequences of certifying to an inaccurate amount. Therefore, the parties' mutual certification that the Debtor's interest was worth $150,000 provides strong proof that both the Defendant and the Debtor believed the value of the mineral interest was $150,000 on February 5, 2009.

This evidence is sufficient to show the Debtor sold his mineral rights to the Defendant for substantially less than their value. The Defendant thereafter had the burden to rebut the Plaintiff's proof of value, which she did not do.

### b. The Defendant Has Not Provided Sufficient Evidence to Find the Certified Consideration Was Wrong.

The Defendant argues the $150,000 consideration stated in the 2009 Deed was a mistake. She testified that she noticed this error on review of the 2009 Deed before signing, but signed anyway out of ignorance and trust in the Debtor's attorney. The Defendant's claim of ignorance is not convincing as she also testified she has reviewed hundreds of deeds in her career.

---

[5] There are similar provisions in West Virginia requiring a statement of value and monetary penalties for a knowing violation. *See* W. VA. CODE § 11-22-6; §11-9-10. As a portion of the property is in Kentucky, making its statutes applicable, and because the parties specifically certified to the consequences of a knowingly false certification under Kentucky law, there is no need for a detailed analysis of West Virginia law.

10

The Defendant's reliance on her own valuation of $20,000 to $35,000 is also not supported by her proof. The Defendant's valuation had two bases: the 2008 Mingo County property tax valuation of her interest at $10,000 and her 2007-08 royalties.

The property tax valuation has little weight. There is no proof the valuation took the gas rights in the property into account and the valuation does not even represent the entirety of the property, a part of which is located in Pike County, Kentucky.[6] Moreover, the tax valuation is inconsistent with the royalties received by Defendant. It is not credible that the value of the interest was only $10,000 when the Defendant made over $42,000 in royalties from her 18% interest in 2008.

The royalties paid not only call into question the tax valuation, they discount the credibility of the Defendant's alleged value range of $20,000 to $35,000. It is not reasonable to believe that the Debtor's mineral interests were worth no more than $35,000 when Defendant received $42,128 for her lesser interest in 2008 and $16,390 in just nine months of 2007. Even in 2009, which the Defendant testified was a low point in natural gas prices, the Defendant received $27,678 for her combined 41% interest. Isolating the Debtor's interest, the Defendant's acquisition brought in $16,987 in royalties in 2009. The Defendant also testified that she anticipated receiving, and did receive, royalties each year since 2007, including substantial royalties in 2013 and 2014.

It is not reasonable to suggest that the value of the Debtor's interest was only 1.2 times the amount of the worst year of annual royalties, or just two fifths of the amount of the best year of royalties. The Plaintiff's testimony that appraisers in the industry typically value mineral interests at six to eight times annual royalties, while inexpert, underscores the flaws in the

---

[6] The record does not show what amount of the land is located in Pike County, making it impossible to extrapolate from the Mingo County valuation.

Defendant's valuation. Further, there is no evidence in the record that proves the Debtor believed the value was not that in the Deed.[7]

The Debtor and the Defendant swore at the time of the transfer, under penalty of fine and imprisonment, that the Debtor's interest was worth $150,000. The Defendant has not come forward with convincing evidence to show this value was wrong, or that the Debtor believed differently. The Court finds that the value of the Debtor's mineral interest, at the time of the transfer, was $150,000, and therefore finds that the value substantially exceeded the consideration the Defendant paid, $20,000.

### B. There Was at Least One Unsecured Creditor at the Time of the Transfer.

The parties also dispute whether there is an unsecured creditor in whose shoes the Plaintiff may stand for purposes of bringing this action. There is at least one. Claim No. 6 of the IRS includes the Debtor's unpaid taxes for 2001, a date that predates the transfer in this case. The Plaintiff testified that the failure to file a return for 2001 created a fixed debt of at least a few hundred thousand dollars. While the Trustee testified he might have arguments to reduce the claim, he also testified that he could not avoid the entire claim and did not plan to raise an objection.

Claim No. 6 is allowable, at least in part, so the IRS was a creditor at the time of the Debtor's transfer to the Defendant.

### III.   CONCLUSION.

The Plaintiff met his burden to prove all elements of § 378.020 and the standing element of § 544(b). The Debtor's transfer to the Defendant, therefore, is avoided. Having avoided the transfer under § 378.020, it is unnecessary to consider whether to avoid the transfer under

---

[7] The Trustee's range of values, $170,000 to $2.8 million, shows that the $150,000 value placed on the mineral interest by the Debtor at the time of the transfer is not unreasonable as it is close to the lower end of the Trustee's range.

§ 378.010.  The only remaining question is the remedy.

Section 550 of the Code allows the Court to award the mineral interest transferred or the value of that interest.  *See* 11 U.S.C. § 550(a).  In his testimony, Plaintiff argued that the Court should award the property because its value could not be fixed.  The Court, however, has determined the property's value; *see* Part II.A.2, *supra*.  The Court will therefore award the property's value to Plaintiff, less the consideration Defendant paid, in a separate judgment accompanying this opinion.

13

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Wednesday, May 27, 2015
(grs)